UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
U.S. COURTHOUSE
402 E. STATE STREET
TRENTON, NEW JERSEY 08608

Hon. Michael B. Kaplan                                                           609-858-9360
United States Bankruptcy Judge                                                   609-989-2259 Fax

September 18, 2014

Amy L. Knapp, Esq.
The Law Offices Of Lee M. Perlman
1926 Greentree Road, Suite 100
Cherry Hill, NJ 08003
*Attorney for Debtors, Alan and Lucy Shafer*

Ellen M. McDowell
McDowell Posternock Law, P.C.
46 W. Main Street
Maple Shade, NJ 08052
*Attorney for Creditor, Alan Stapleton*

       Re:  Shafer, Alan and Lucy (Chapter 13) (MBK)
         Case No. 14-18831

Dear Ms. Knapp and Ms. McDowell:

  This matter comes before the Court on a motion to dismiss ("Motion") filed by Alan Stapleton (the "Creditor") on June 23, 2014, which seeks to dismiss the Chapter 13 bankruptcy case of Alan and Lucy Shafer (the "Debtors") pursuant to 11 U.S.C. § 1307(c). The Court has considered all of the papers submitted, together with any arguments of counsel, testimony given and exhibits introduced and admitted at the hearing held herein. Based on the foregoing, Court makes the following findings:

## Jurisdiction

  The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended October 17, 2013, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A) and (L). Venue is proper in this Court pursuant to 28 U.S.C. § 1408. The following constitutes the Court's findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052.[1]

---

[1] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

### Findings of Fact

On April 30, 2014 ("Petition Date"), the Debtors filed a voluntary petition ("Petition") for relief pursuant to Chapter 13 of the United States Code (the "Bankruptcy Code").[2] Prior to the Petition Date, the Debtors agreed to a loan from the Creditor, enforced by a Promissory Note dated March 24, 2013.[3] The Promissory Note sets forth a principal sum of $35,000 plus interest, with the first monthly payment to be due in December 2013. From December 2013 to the Petition Date, the Debtors did not make any payments to the Creditor. Prior to the Petition Date, the Creditor commenced a civil proceeding (the "Civil Proceeding") in the Superior Court of New Jersey in Burlington County in an attempt to collect the amount due on the Promissory Note.

The Creditor asks this Court to dismiss the Debtors' Chapter 13 bankruptcy case on the basis that the Debtors' Petition was filed in bad faith. Specifically, the Creditor asserts that the Petition was filed for the sole purpose of frustrating the Creditor's ability to collect the amount due and owing under the Promissory Note.

### Legal Analysis

According to 11 U.S.C. § 1307(c), the Court may dismiss a case "for cause." The Third Circuit, along with other circuits, has declared that filing for Chapter 13 bankruptcy in bad faith is sufficient cause for dismissal of the case under Bankruptcy Code § 1307(c). *In re Lilley*, 91 F.3d 491, 496 (3rd Cir. 1996).[4] Because it cannot precisely be defined, a good-faith analysis is conducted on a "case by case basis in light of the totality of the circumstances." *Id.* The Third Circuit has developed a number of factors to assist bankruptcy courts when assessing whether a debtor has filed in good faith, and is summarized as follows:

> The Bankruptcy Court looks to the totality of the circumstances to determine bad faith, and may consider a wide range of factors, including, 'the nature of the debt ...; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors.'

*In re Myers*, 491 F.3d 120, 125 (3d Cir. 2007) (quoting *In re Lilley*, 91 F.3d 491, 496 (3d Cir. 1996)). "Other factors may be considered relevant, and no one factor is controlling. Actual fraud is not necessary to support a determination of bad faith." *In re Roth*, 2010 WL 2485951, 1 (Bankr. D.N.J. June 14, 2010) (citations omitted).

---

[2] This is the Debtors' second bankruptcy filing. On September 28, 2009, the Debtors filed a petition under Chapter 7 of the Bankruptcy Code and on January 8, 2010, the Debtors received a discharge.

[3] The Promissory Note lists the lender as "Alan Stapleton" but it is undisputed that the loan was funded by Mr. Stapleton's business, Car Fare Compare, Inc., rather than by Mr. Stapleton personally.

[4] Similarly, the amendments in the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") of 2005 explicitly note that a Chapter 13 plan must be filed in good faith.

2

Once a creditor asserts that a debtor has filed in bad faith, the burden shifts to the debtor to prove by a preponderance of the evidence that the Petition was filed in good faith. *In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000). Based on the reasons set forth below, the Court finds that the Debtors have failed to produce sufficient evidence to demonstrate that the Debtors did indeed file this case in good faith. Accordingly, the Court grants the Creditor's motion to dismiss based on a finding of bad faith.

In assessing the "good faith" factors laid out by the Third Circuit, this Court first considers the nature of the debt. As noted above, on March 24, 2013, the Debtors negotiated with the Creditor and agreed to the Promissory Note. The debt to the Creditor on the Promissory Note was listed on the Debtors' schedules, along with a debt owed to a holder of a reverse mortgage. No other creditors were listed on the Debtors' schedules. In point of fact, the Debtors previously discharged over $300,000 of debt in their prior bankruptcy filing under Chapter 7 of the Bankruptcy Code; the Court surmises that the within case also would have been filed under Chapter 7 but for the bar to a discharge under 11 U.S.C. § 727(a)(8). Although the Debtors listed the reverse mortgage on their schedules, the Debtors need not make any payments on the reverse mortgage. Thus, this case is essentially a two-party dispute between the Debtors and the Creditor. A number of courts have found that "[t]wo-party disputes . . . simply have no place in bankruptcy . . . . Many courts have found that such filings violate the 'good faith' prerequisite to invoking the bankruptcy court's equitable jurisdiction." *In re Gambacorto*, 2011 WL 3512179, 1 (Bankr. D.N.J. Aug. 11, 2011) (quoting *In re Shead*, 2008 WL 1995373, 3 (S.D.Tex. 2008)).

The second factor that the Court considers is the timing of the filing. In this case, the Petition was filed by the Debtors shortly after the Creditor commenced the Civil Proceeding. Indeed, the Petition was filed on the eve of the entry of a default judgment in the Civil Proceeding against the Debtors. While the Court recognizes that filing for bankruptcy protection on the eve of litigation does not automatically mean that such filing was made in bad faith, *In re Dami*, 172 B.R. 6, 10 (Bankr. E.D.Pa. 1994), the Third Circuit has directed bankruptcy courts to consider not only the timing of the Petition, but also the circumstances surrounding the Debtors' bankruptcy. *See, e.g., In re Antonelli*, 2012 WL 280722, 9 (Bankr. D.N.J. Jan. 30, 2012). Thus far, the Court has concluded that this is a two-party dispute between the Debtors and the Creditor, with the Petition having been filed shortly after the Creditor attempted to collect upon the Promissory Note. As such, the Court can only come to one logical conclusion: the Debtors' motive in filing their Petition was solely to avoid paying the amount due to the Creditor.

Third, the Court considers the Debtors' actions and how they affected the Creditor. In making this consideration, the Court is mindful of the Debtors' *inactions*. From December 2013 to the Petition Date, the Debtors made absolutely no effort to commence payment or re-negotiate the terms of the Promissory Note. The Court finds it troublesome that the Debtors made no attempt whatsoever to make even a partial payment on the Promissory Note, or ever communicate a desire to restructure the obligation. As evidenced by the Debtors' bank statements, the Debtors were able to afford to make hundreds of dollars worth of purchases on a monthly basis from various retailers, yet the Debtors did not seek to pay down the Promissory

3

Note by a single penny.[5] The obligation owing the Creditor was not a large balloon payment; rather, the Debtors had only to commence making installment payments of $371.23. Undoubtedly, the Debtors' actions were detrimental to the Creditor.

Moreover, the Debtors assert that their financial struggles were the reason for making the first payment on the Promissory Note due December 2013, nine months after execution of the Promissory Note. Instead of making a conscientious effort to repay the Creditor, the Debtors admit that they engaged in a purchase of a new home prior to filing this case. Moreover, the Debtors acknowledge utilizing certain annuities to help fund this purchase.[6] The Court is troubled by the irresponsible choices and poor financial planning on the part of the Debtors and the implications and consequences thereof. The Debtors carried on without regard to the fact that the Creditor was waiting for the repayment of his loan. To this end, the Debtors' actions were prejudicial to the Creditor.

Additionally, the Debtors assert that Mr. Shafer is entitled to commissions in excess of $150,000, allegedly earned while working for the Creditor's company, Rewards for Working, Inc., which has since ceased operations and legally dissolved. The Debtors declare that upon receipt of said commissions, same would be used to repay the amount due on the Promissory Note. However, apart from what is certified in the pleadings before this Court, the Debtors have not presented any evidence of Mr. Shafer's entitlement to commissions. Nor have the Debtors proven their reliance thereon in taking a loan from the Creditor. Indeed, the Promissory Note makes no reference to any commissions due and owing to Mr. Shafer. What is more, email correspondence between Mr. Shafer and the Creditor dating back to December 2013 provide absolutely no evidence that Mr. Shafer was relying on the receipt of commissions in order to make payment on the Promissory Note. The emails, dated December 2, 2013, read as follows:

> Mr. Stapleton: Hi Alan, The promissory note does not specify what day in December that payments are to begin. Is the 15th ok?
>
> Mr. Shafer: Al would. Rather [sic] have it on the 22 that's when I get my social security check
>
> Mr. Stapleton: Ok

*Ex. C-4.* Quite simply, neither the loan documents, nor any communication ties repayment of the obligation to collection of commissions.

The fourth factor considered by the Court is the Debtors' treatment of creditors both before and after the Petition was filed. As noted, the Debtors within the past four years have discharged over $300,000 in primarily consumer debt. Now, having already discussed the Debtors' treatment of creditors before the Petition was filed, the Court directs its attention to the

---

[5] "As the courts have often repeated, the bankruptcy law is to provide relief to the poor but honest debtor who has tried his best to pay his creditors but failed." *In re Brown*, 88 B.R. 280, 284 (Bankr. D. Haw. 1988) (citation omitted). In the case at hand, the Debtors made *no* attempt to pay the Creditor.

[6] It is also undisputed that the Debtors currently receive monthly sums from an IRA, listed on Schedule B of their Petition, having a value of $100,000.

terms of the Debtors' Chapter 13 Plan. The Chapter 13 Plan calls for a minimal payment to the Creditor. Specifically, the Plan sets forth to pay only $200 a month for the minimum plan period of 36 months. After Trustee commissions and attorney fees, the Creditor will receive less than ten percent of his claim including the interest due to the Creditor over the course of the term of the loan.

Lastly, the Court considers whether the Debtors were forthcoming with the Court and the Creditor. The Court does not believe that the Debtors omitted or otherwise materially misrepresented the existence or value of assets on their initial schedules. Accordingly, there is nothing to suggest that the Debtors were not forthcoming with this Court and the Creditor.

For the foregoing reasons, and in light of the totality of the circumstances, the Court finds that the Debtors have failed to meet their burden of proof with regards to a showing of good faith. In rendering the decision herein, this Court is heedful of the Third Circuit's stance on the dismissal of a case based on lack of good faith, which should not be lightly inferred. *See, Perlin v. Hitachi Capital Am. Corp.*, 497 F.3d 364, 373 (3d Cir. 2007). While the Court is sensitive to the Debtors' plight, the Court finds that the totality of the circumstances tips the scale in favor of dismissal. The Debtors did not proffer any evidence of good faith, other than their word that they entered into the Promissory Note with the Creditor for subsistence purposes and intended to repay the Creditor upon receipt of alleged unpaid commissions.[7] The Debtors' self-serving statements are insufficient to warrant a finding of good faith. Accordingly, the Court finds that the Debtors filed the Petition in bad faith and the Creditor's motion to dismiss the case shall be granted.

## Conclusion

In light of the foregoing and in accordance with 11 U.S.C. § 1307(c), the Court grants the Creditor's motion to dismiss the Chapter 13 bankruptcy case of the Debtors on a finding of bad faith.

Honorable Michael B. Kaplan
United States Bankruptcy Judge

Dated: September 18, 2014

---

[7] *See, e.g., In re Tamecki*, 229 F.3d at 207-08 (finding that the debtor failed to prove good faith, as the only evidence he offered was testimony "that he accrued his debt for subsistence purposes [and] intended to repay the debt . . . .").

5